### KAISER–FRAZER CORPORATION v. OTIS & CO.

United States District Court,
S. D. New York.

July 27, 1948.

Willkie, Owen, Farr, Gallagher & Walton, of New York City (Mark F. Hughes and Joseph Morse, both of New York City, of counsel), for plaintiff.

Joseph L. Winer, of New York City, for defendant.

LEIBELL, District Judge.

This is a motion made by the plaintiff on June 30, 1948, under Rule 15(a), Federal Rules of Civil Procedure, 28 U.S.C.A., for leave to serve an amended complaint. The original complaint contained three causes of action and was filed in the Supreme Court of the State of New York, New York County, on February 15, 1948. At the end of March the action was removed to this court, because of diversity of citizenship. Defendant served an answer to the original complaint on April 24th. The answer contains a denial of many of the material allegations of the complaint and pleads a number of special defenses and a counterclaim, to which the plaintiff served a reply on May 17th.

The allegations of the first cause of action of the original complaint maybe summarized as follows:—the defendant signed an underwriting agreement on February 3, 1948 whereby defendant agreed to purchase from plaintiff at Cleveland, Ohio, on February 9, 1948, 337,500 shares of plaintiff's common stock at $11.50 a share; on February 9th defendant repudiated the contract and failed to pay for the stock; the shares could not readily be resold for a reasonable price; on February 9th after defendant's repudiation plaintiff duly notified defendant in writing that it held said shares as bailee for defendant; plaintiff duly performed all of the conditions of the contract on its part to be performed; there was owing to plaintiff on February 9, 1948, $3,-881,250, no part of which has been paid.

The second cause of action of the original complaint was for the same amount and the allegations were substantially the same as in the first cause of action, with an additional allegation that, in order to establish an excuse for its repudiation of the contract, defendant caused a suit to be filed by a certain individual on February 9, 1948 in the Circuit Court of Wayne County, State of Michigan, which was in effect a collusive action.

The third cause of action of the original complaint alleged the making of a similar underwriting agreement between plaintiff and the First California Company on February 3, 1948, also for 337,500 shares, which defendant induced the First California Company to breach on February 9, 1948 to plaintiff's damage in the sum of $3,881,250.

The total damages sought in the original complaint were $7,762,500, of which $3,-881,250 was claimed in the first two causes of action based on the breach of defendant's underwriting agreement, and $3,881,-250 in the third cause of action based on the induced breach of the First California Company's underwriting agreement.

The amended complaint which plaintiff asks leave to serve, would reduce the amount of the damage claimed under the third cause of action from $3,881,250 to $1,856,250, to which there can not be any serious objection, and to change the theory on which the damages are claimed in the first and second causes of action and to increase the amount thereof.

The allegations as to the underwriting agreement and its breach are unchanged in

the amended complaint so that the conduct of the defendant which is the basis for the claim asserted in the first and second causes of action, is the same in both complaints. What the plaintiff wishes to amend concerns the remedy, not the claim. Plaintiff would eliminate the allegations in respect to the notice plaintiff sent to the defendant February 9th, to the effect that plaintiff was holding the shares for the defendant for which the agreed purchase price was demanded, § 144(3) of the New York Personal Property Law, Consol.Laws, c. 41, § 63 of the Uniform Sales Act, and to add certain allegations:—that the defendant knew that plaintiff intended to use the proceeds of the sale of the stock for the improvement of its manufacturing facilities and for the purpose of increasing its production of automobiles and that defendant knew that the failure to obtain the proceeds of said sale would result in special damage to plaintiff; that plaintiff sustained general damage in the sum of $1,856,250 and special damages in the sum of $15,563,569.

Prior to serving the amended complaint plaintiff served a notice on defendant on June 29, 1948, which referred to plaintiff's notice of February 9, 1948 and stated that in as much as defendant's default had persisted for an unreasonable time, plaintiff would no longer hold the shares available for delivery upon payment of the purchase price and would hold defendant liable for damages for the loss occasioned by defendant's breach of the agreement to purchase.

In an affidavit of June 29th filed in support of the motion for leave to amend its complaint, plaintiff's secretary states in effect that subsequent to the making of the underwriting agreement of February 3rd and subsequent to defendant's breach thereof on February 9th the price of plaintiff's stock on the New York Curb Exchange declined but that it now has become apparent that the price of the stock will probably rise above not only $11.50 a share, the contract price, but also above $13.00 a share the price at which the stock was to be offered to the public under the underwriting agreement of February 3rd; and that thus the defendant could, by reason of its repudiation, "profit at risk of plaintiff and

without risk to the defendant", and that therefore the notice of June 29th was sent to defendant. In an opposing affidavit of defendant's president, sworn to July 16, 1948, he says that plaintiff's stock since February 9th has been as low as 8⅛ and that now that plaintiff believes the market is going up, plaintiff wishes to change its position and to seek some other and more favorable theory. Defendant also attacks the good faith of plaintiff in claiming the special damages.

Defendant's attorney opposes plaintiff's motion for leave to serve an amended complaint on three grounds:—(1) that it is not made in good faith and is not in the interest of justice; (2) that plaintiff had made an irrevocable election to hold the stock as bailee for defendant and claim only the purchase price as damages and therefore cannot change its position; and (3) that the complaint is being amended in reliance upon events subsequent to the commencement of the action. There is no contention that the amended complaint is not good on its face.

■ There is not a sufficient showing on this motion for the Court to conclude that plaintiff's motion is prompted by any bad faith. The allegation of special damage is not evidence of bad faith. It may very well be that events occurring since the commencement of this action prompted the amendment to include a claim of special damages.

■ As to the second objection, even if it be assumed that plaintiff's notice of February 9th constitutes an election and that the election is irrevocable, that is a matter to be pleaded as a defense to the first and second causes of action as amended, and is not an absolute bar to an allowance of the amendment. Further, the allegations of the original complaint as to the notice, on which the alleged irrevocable election is based, were denied by defendant's answer. The wording of the plaintiff's notice of February 9th may account for the denial; it may not constitute a notice by plaintiff that the stock was to be thereafter held by plaintiff "as bailee" for the defendant. True, the notice under § 144(3) of the New York Personal Proper-

ty Law need not use the word "bailee"; if the words used are such as to convey that meaning, that would be sufficient. Carlson, Holmes & Bromstad Inc. v. M. I. Stewart & Co., Inc., 1932, 147 Misc. 607, 264 N.Y.S. 277, affirmed 1935, 246 App.Div. 522, 283 N.Y.S. 430. But in passing upon this motion to amend it is not necessary for the court to decide the issue as to whether plaintiff by the notice of February 9th made an irrevocable election. That may be determined either on a motion for summary judgment or by a motion for a directed verdict at the trial.

What plaintiff seeks to accomplish by the amendment is to claim general and special damages for the breach of the contract, not just the purchase price of the stock. It may be that plaintiff by giving notice of its changed position on June 29th and then seeking permission to serve an amended complaint has not improved its litigating position. But how can defendant be harmed by plaintiff's assumption of that risk? If in going after larger stakes plaintiff sacrifices the basis for the claim it originally pleaded, the defendant will be the gainer.

Defendant's third objection, that the amendment is based on events arising since the original complaint was served, is without merit. Whether the amendments result in an amended or a supplemental complaint, is of no real importance in the decision of this motion. Rule 15(d) provides for the service of supplemental pleadings "setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."

"The office of a supplementary complaint is * * * to introduce new facts enlarging or changing the relief first sought". Moore's Federal Practice 1947 Cumulative Supplement, footnote on p. 396. "A supplemental complaint should be allowed in aid of economy and the speedy disposition of the controversy if defendant is not prejudiced, as where its rights are as well preserved by trial on a supplemental complaint as by trial in a new action". Moore, same page.

Rule 15(a) F.R.C.P. provides that leave to amend pleadings "shall be freely given when justice so requires" I am satisfied on the facts presented on this motion that this is a case where justice requires that plaintiff be granted leave to serve its proposed amended complaint. Settle an order accordingly.